Good afternoon, Illinois Appellate Court, 1st District Court is now in session, the 6th Division, the Honorable Justice Carl Anthony Walker residing, case number 22-0195, State of Illinois and Stephen B. Diamond versus Henry Poole and Company. Yeah, good afternoon, everybody. I'm Justice Walker and I have here with me Justice Odin Johnson and Justice Taylor. And what we like to do is first ask the lawyers, if you could please introduce yourselves for us. Good afternoon. My name is Matthew Burns. I represent the Relator Appellate. Thank you. Thank you. Good afternoon, Your Honors. John Sharkey. I represent Henry Poole and Company, I guess the Respondent and Appellate. Thank you. And let me just ask each of you, I'll start with you, Mr. Burns. How much time do you need today? And how do you want to divide your time up? I only need about 10 minutes, Your Honor. And then I can reserve some for rebuttal. Okay, well, we allow you up to 20. So if you want to reserve 10, you can speak for 10, reserve 10, or you can speak for 15 and reserve 5. It's totally up to you. Understood. I can reserve 5 minutes, Your Honor. Sure. Okay. And then, Mr. Sharkey, I assume you're going to use your entire 20 minutes, correct? Your Honor, we think the issues are fairly straightforward. I don't know if I will need 20 minutes to address the critical points that we believe control the outcome. Okay, well, we're pretty flexible. So just let us know what you need. And we will go ahead and get started. Mr. Burns, you're up first. Thank you, Your Honor. May it please the Court. There are two issues on appeal. The first is that the Circuit Court did not apply the correct standard for reckless disregard under the False Claims Act. The correct standard was stated in the Court's My Pillow decision. That standard for reckless disregard is not a negligence standard, as Poole and the Circuit Court contend. The second issue is whether Relator had to prove the existence of a false statement or record. Relator did not have to prove the existence of a false statement or record because the legislature amended the False Claims Act in 2010 to add alternate liability for any person who knowingly avoids paying money to the state. By adding that language, the legislature eliminated the false statement requirement. Focusing on the first issue, after initially using the correct standard for reckless disregard, the Circuit Court reconsidered and applied. The Circuit Court relied on the following facts for its decision. Henry Poole, a United Kingdom company, regularly sent employees to Illinois to make sales of custom order clothing. Poole employees met with customers at Illinois hotels, took their measurements, and obtained payment information. Poole made no effort to investigate the tax consequences of regularly sending its employees to Illinois to make sales. The Circuit Court found that Poole did not review Illinois statutes, did not review Illinois regulations, did not review case law, did not review the Illinois Department of Revenue website or publications, and never sought advice from the Illinois Department of Revenue. The Circuit Court's conclusion was based on Poole's discovery responses. Relator had asked Poole if it investigated whether it had an obligation to collect and remit taxes on sales shipped to Illinois addresses. Poole responded that it was unaware that a use tax existed, that it conducted no investigation, and that it, quote, had no reason to think of conducting an investigation. So, so, Mr. Burns, what you're telling us is that you're, you're stating that this is more like my pillow and therefore there, there was a violation and that, but the question really is, even with all of that, everything you just said, help us as to how you get to the knowingly part of the act. Absolutely, Your Honor. The critical standard was stated in my pillow, and that's that reckless disregard requires more than innocent mistakes or negligence. It refers to the failure to make such inquiry as would be reasonable and prudent to conduct under the circumstances, a limited duty to inquire as opposed to a burdensome obligation. That's from page 42 of my pillow. That's the standard that applies here. And that is not a negligence standard. And this court applied that standard in my pillow when it upheld the trial judgment. And it said, quote, my pillows conduct was far removed from a reasonable prudent inquiry into its use tax obligations under Illinois law and was much more akin to burying its head in the sand and ignoring obvious warning signs. End quote. That's from paragraph 62, Your Honor. And Poole's conduct falls on the same end of the scale as my pillow. It admits that it was unaware of the use tax's existence. It can So how do you, so Mr. Burns, I don't mean to interrupt you and I apologize for having to do that, but I just want to ask you, how do you reconcile that with relax the back where it says that it requires some sort of affirmative omission? Sure, Your Honor. This court actually distinguished relax the back and another case, national business furniture from my pillow. And in both of those cases, this court said that the retailers in those cases actually undertook investigations and came to reasonable conclusions. I'll start with But the evidence that trial actually showed otherwise, it showed that the CFO of that company investigated the tax statute, actually a tax regulation that was at issue. And he came to a conclusion based on reading that statute. They were also audited by the Illinois Department of Revenue. They also subscribed to tax alerts and had tax software that they used to stay apprised of any changes in tax law. Okay, relax the back, same thing. They investigated what their obligation was. And this court in my pillow held that what would The reason that my pillow was liable, the reason it was distinguishable from those two cases, the fatal blow was that my pillow did not make a reasonable and prudent inquiry into its tax obligations. It didn't do anything. It didn't review tax statutes, regulations, the website, IDOR publications, or case law. It didn't hire lawyers. It didn't hire accountants. Counsel, if I were only going to a particular jurisdiction twice a year, I might not think that I need to do that kind of investigation. I have, you know, my set clients and I'm only going twice a year. Why would I, why would a reasonable person think that they need to do that kind of investigation? Your Honor, we're not saying that they needed to necessarily do all of those things. They needed to do something. They did nothing. They're sending employees to Illinois from a foreign country to meet with customers and make sales and they didn't do anything. And now, just like this court said in my pillow, they're holding up their hands and saying, how was I supposed to know that I was doing anything wrong? And my pillow requires simple inquiries. It's a limited duty to inquire. It's not a burdensome obligation. That's the standard from my pillow, Your Honor. Do we know how much they were earning? I know it's not, you know, you know, necessarily or highly relevant, but how much were they earning from these two days that they came to Illinois? Thank you for the question, Your Honor. We believe that is an important question and don't know because the trial court limited to this limited discovery only to the issue of Scienter. So we have no idea what amount of sales there are. We also don't know whether Henry Poole accepted payment by cash or check. And that's important because if they accepted payment by cash or check, the Retailer's Occupation Tax Act could apply and they could owe Retailer's Occupation Tax. So those are both relevant questions, Your Honor. Thank you. So what about obvious warning signs and red flags, Your Honor? That's something that Henry Poole argues is not present in this case. The term red flag is a made up term that appears nowhere in my pillow, relax the bag, or the National Business Furniture case. Poole ignores the inconvenient fact that it regularly sent its employees to Illinois, a state and a foreign country to make sales. And those employees met with customers, they took their measurements, they obtained payment information. And those trips distinguished Poole from foreign merchants that never set foot in Illinois. And there are an obvious reason to conduct a simple investigation. Because Illinois has taxes, and anyone who comes here to conduct business has an obligation to investigate what those taxes are, just like National Business Furniture investigated, just like relax the bag investigated. Poole cannot reap the benefits of traveling to Illinois to conduct business, but then cry foul when it's required to investigate its tax obligation. Poole ignored the obvious warning signs, it buried its head in the sand like an ostrich, and it failed to make simple inquiries which would have alerted it that it was avoiding or decreasing an obligation to pay money to the state. Holding Poole liable will not, as Poole claims, create a Byzantine and burdensome administrative obligation for every merchant anywhere around the world that ships merchandise to Illinois. Instead, just like my pillow, it will hold a merchant accountable that sent its employees to Illinois to meet with customers and make sales. And Mr. Burns, I want to just back you up just a minute because Mr. Sharkey argues in his brief that relax the bag supports the idea that the 2010 amendment did not eliminate the requirement of false information be submitted to the government. So I want you to kind of respond to that. Sure, that's the second issue, Your Honor, of this appeal. Yes, I'll address that, Your Honor. The legislature amended the reverse false claims provision in 2010 to add alternate liability for anyone who quote knowingly conceals or knowingly and improperly decreases an obligation to pay or transmit money or property to the state, end quote. And that statutory language is clear. It doesn't say anything about a false statement. There's no requirement there that a defendant must conceal or avoid a payment to the state and also must make a false statement. It's an or situation, Your Honor, so that that false statement language does remain in the False Claims Act, but to address situations like this, where nothing is filed, there's no taxes that were filed here, there's no false statement. That is why the legislature amended the act to add that provision. And the circuit court quoted this court's Ritz-Cameron decision in making that erroneous holding, Your Honor, and that's problematic because Ritz-Cameron was decided three years before the amendments were added. Mr. Burns, can I ask you a question about your theory on reverse false claims? You have taken a position that there's liability even if the defendant does not submit any document to the government. And I want to understand how far your theory goes. I'm going to give you an example, just by way of analogy. I received my license plate renewal sticker the other day, and I sent my check in. If I did not do that, does that mean that I violated the False Claims Act? You have to knowingly and improperly avoid or decrease an obligation to pay or transmit money or property to the state, Your Honor. And under the False Claims Act, knowingly can mean recklessly disregard. But you haven't addressed my question. You just recited the statute. So what I want to know is, under your theory, would I be liable for violating the False Claims Act? Or we could even make an example of failing to pay income tax to the state. Does that mean that I'm liable because I didn't pay my tax? I understand your question, Your Honor. And I would say yes, because if you improperly avoided or decreased your obligation to pay money to the state, and you did so knowingly, then yes, you did. Let me ask you this. The statute uses the word improperly avoid. I'm going to emphasize the word avoid. And then it also uses the word decrease. That seems like an odd choice of word to use for imposing liability for not doing something. Why wouldn't the statute or the General Assembly just say if someone fails to pay your tax or fails to pay something that's owed the government, then it's subject to liability? But the word avoid just seems odd to me. And I'm just wondering whether you are equating avoid with fail, with the failure to do something, or whether it's some more nuanced meaning in the context of the False Claims Act. Your Honor, I don't have a more nuanced meaning. I believe that avoid does mean fail, because if you avoid to do something, then you have failed to do that thing. So why would the legislature just use that kind of language? It seems just strange to me. Why not just say it directly? Avoid just seems like an odd word to use for the failure to do something. Your Honor, it's not just the failure to do something. They also have to act with reckless disregard. And that's the issue that we have before the court today. Was there something that they should have done, and did they do so knowingly? And in this case, they didn't do anything. They didn't conduct any investigation. They didn't look at any sales tax statutes. Let me ask you one other question. Sorry to interrupt you. Are you aware of any interpretation of the Federal False Claims Act that's consistent with the position you're taking today? That is that you don't need to submit anything as long as you fail to do something. You're liable under the Federal False Claims Act. Not as I sit here today, Your Honor. I don't have a case off the top of my head that addresses that specific issue. The other question I wanted to ask you, which is raised by the defendant, and you haven't addressed in your reply, but the Use Tax Act, as I understand it, imposes the obligation to pay the tax not only on the retailer, but also on the customer if the retailer doesn't pay. And I'm not aware of any instance of a false claims case where the plaintiff or the relator is in the same boat as the defendant. That is, you're alleging that the defendant here has violated the False Claims Act, essentially that he's a tax cheat. But is your client a tax cheat as well? Not if the defendant is the one that's required to collect the tax, Your Honor. Well, but regardless of whether the defendant has an obligation to collect the tax, you have an obligation, your client has an obligation to pay the tax, doesn't he? He has an obligation to pay the tax, yes, Your Honor. And according to the defendant, your client didn't pay the tax, so you presumably are also in violation of the False Claims Act, and then aren't you hopelessly conflicted in this case? No, I don't believe so, Your Honor. Why not? We're not hopelessly conflicted because there is no pending case against the relator, there's no counterclaim in this instance, Your Honor. The only issue is whether Henry Poole knowingly violated the False Claims Act. That's the issue in the complaint, that's the issue before the court, Your Honor. Okay, I wanted to make sure Justice Taylor was done there. Now, I want to come back to the statute for a minute because the statute says knowingly concealing. It says conceal, but I'm going to add the adjourn to all these words, knowingly concealing or knowingly improperly avoiding. For some reason, and I'm coming back to the question Justice Taylor was asking you, they could have said failure, which I believe would have created a different standard because when you're talking about knowingly concealing and avoiding or improperly avoiding, those are terms that seem to me to imply something more than what we may have here with Poole. It seems like those terms require almost like the person to cheat or do more than just simply not pay. And I'd like to ask you to respond to that. I'll probably ask Mr. Sharkey to respond as well. Thank you for the question, Your Honor, and I would just direct the court to its MyPillow decision, where it upheld that MyPillow knowingly and improperly avoided its tax obligation. That was enough and MyPillow did nothing. They did not investigate their tax obligations, they did not hire lawyers, they did not consult with anyone, and that was enough. They did not conduct a reasonable and prudent obligation. That was the standard that this court espoused and followed in MyPillow, Your Honor. And so, again, we still have the issue of the knowingly. And we all agree that it's not a negligence standard here, but we're still talking about whether or not they knowingly. And it kind of comes back to the question that Justice Johnson was asking as well. Sorry to interrupt you, Your Honor. I thought you were done speaking. I would simply turn the court back to the standard that it stated in MyPillow about what reckless disregard is. Remember, reckless disregard is a form of knowingly. Okay, there's three forms of knowingly. There's actual knowledge, there's deliberate ignorance, and there's reckless disregard. Reckless disregard is the lowest standard that has to be met. And this court said that reckless disregard refers to the failure to make such inquiry as would be reasonable and prudent to conduct under the circumstances a limited duty to inquire, as opposed to a burdensome obligation. So whether or not we interpret avoided to mean failure, we have to use that standard. And here in this case, just like MyPillow, Poole did not conduct a reasonable and prudent inquiry under the circumstances. It did nothing. It made no simple inquiries. So in response to your question, Justice Walker, and to Justice Taylor's question, I would simply refer the court back to the standard it has already stated in MyPillow that answers your question about whether we should interpret avoid to mean something else or whether we should interpret avoid to mean failure. The answer is in MyPillow. Unless the court has any more questions, I will reserve the rest of my time. Well, you can reserve it but may as well just ask you this question while you're up first because then I'll get a chance to hear from Mr. Sharkey and then we can hear from you again on it I think it'll be important. Mr. Sharkey filed a motion to cite some additional authority. Is there anything there that you want to respond to? Sure, that refers to the Supreme Court's recent super value decision, Your Honor. And that case does not have an impact on this case because super value was an actual knowledge case, not a reckless disregard case. The super value defendant was notified that its interpretation of a Medicare provision was wrong. And the super value defendant nevertheless continued to charge the government pursuant to that incorrect interpretation. So the issue in super value was whether the defendant could nonetheless be held liable if its interpretation of that provision was objectively reasonable. And the Supreme Court held super values subjective knowledge was what mattered what super value actually knew and what they actually knew because they had been told was that its interpretation is wrong. And this case is different because it's a reckless disregard case and super value specifically stated in footnote five of that decision that it was not reaching the issue of objective recklessness. That is whether a defendant like pool may be reckless for acting in the face of an unjustifiably high risk. That was so obvious it should have been known, even if like pool. It was not conscious of the risk. So, Your Honor, I would submit that super value specifically did not address that situation but this court did address that situation in my pillow when it upheld that my pillow was liable for failing to investigate its tax obligation because it did not conduct a reasonable and prudent inquiry. Under the circumstances because it had a limited duty like pool to inquire not a burdensome obligation. Thank you, Your Honor. Mr second. May it please the court. Your Honors, the false claims act is by definition, a fraud statute. It's a fraud statute. It requires both knowledge, and it requires action. Justice Walker and and Justice Taylor you seem to eat in on that. Those are critically important aspects of this case we believe. Because it is a, a false claims case, they have to show knowledge, and the statute defines what that is, and there has to be some action in connection with that knowledge. The reckless disregard standard, which Mr Burns is articulated. I would add that what the standard that Mr Burns has articulated is is incomplete, and it's incorrect reckless disregard. And this is this court's holding in my pillow. It requires not just a hard stop after the portion of the of the opinion that Mr Burns gave you. But importantly, this court said that that reckless disregard ignores warning signs, and, and refuses to learn of information which in the exercise of prudent judgment should be discovered. So, so, Mr Sharkey. Mr Burns is position, however, is that here, this is exactly like my pillow to the extent that there were, there was no investigation whatsoever. And that that rises to the level of a violation of the act. And you're taking the position that there's no violation, because there were no red flags if you will. So you want to just kind of pick us through that, please. I'd be happy to justice Walker. To begin with, national business furniture, despite paying some attention to the ID or ID or audit, specifically held that a failure to investigate is not in and of itself, evidence of reckless disregard so that's one. That court specifically rejected the argument that Mr Burns has made. Relax the back. Same thing, rejected the isolated proposition that a mere failure to investigate in and of itself is therefore evidence of reckless disregard so both of those cases, back to back, have rejected that proposition. That brings us to my pillow. And your honor for the reasons we've articulated in the brief, I would submit to the to the panel that my pillow is qualitatively factually, it is a fundamentally different case. The reason why the court concluded that my pillow was liable under a reckless disregard theory was the manifold warning signs and red flags that were abundantly apparent to my pillow. And I think it's important to kind of just quickly walk through that case. My pillow was in Illinois they were attending I think the record in that case is something like 40 craft shows in Illinois, a year. They had already undertaken the responsibility to collect taxes on those sales and remit them to the state of Illinois. They, including use tax, they, they submitted returns with the, with the Department of Revenue, they the st one form that they submitted specifically informed them that internet and website transactions would give rise to a use tax obligation, that is for them to collect. They were generating revenues of 10, I think the record is $10 million worth of internet and website revenues associated with sales that went to Illinois. In this, in the face of all of those things, when my pillow shifted from a, from a craft show based theory to a, to an online presence in the face of everything that they filed all of their interactions, all of the information that they were equipped with. When they flipped into this, you know, online marketplace model, they contended. Seriously, it appears from the, from the proceedings that they didn't know they had a duty to collect use tax on those online orders. In this case, and it's uncontested, the evidence is unrebutted. There is no genuine issue of any fact that pool, who is a foreign based retailer. They have one shop in London. They do all their work in London. Had absolutely no knowledge of the use tax. They had no reason to know what the use tax they're unfamiliar with. Oh, go ahead. Go ahead. No, please. No, no, please go. I've already asked many questions. Thank you. So, Mr Sharkey you rely on your client's affidavit, in which he averse that he didn't have any knowledge of the use tax or pools obligations to collect the use tax. And my question to you is couldn't a reasonable person find that statement to be incredible. Considering that, despite, despite, you know, pools contention that it's a family owned company. It's a 200 year old company on civil role in London that enters foreign markets on a regular basis to solicit customers here. And that we know that there are two things in life that are for certain. One is death. The second is taxes, and everyone knows that there are tax consequences to transactions, and I'm sure pool knows that. And, and so you rest on this notion that I didn't know. And I find that so far fetched. And I gotta say that a reasonable person could find that incredible that you didn't know. I'm just looking at, and I don't know if this is in the record, but according to pool's website, not only are you in London, but you're in Japan, China, your trunk shows to France, Germany, Luxembourg, Switzerland, Austria, Japan, and 10 major cities in the US. I find that I didn't know contention to be, you know, I think a reasonable person could find that to be incredible. Is. I want to answer the question is, why is that? Why? So the question is, could not a reasonable person find that to be incredible? I think you have to take Mr. Cundy's affidavit for value. He submitted that affidavit. He believed it's his. It's the truth. It's unrebutted. I understand it's unrebutted, but, you know, could not or you don't have to accept everything that someone says, but not a reasonable person say, I don't believe him. Pool is a, is a, although it may travel as a matter of courtesy, which it has done for many, many years. Well, but it's not doing it for courtesy. It's doing it to solicit the foreign markets, right? To get the business. It's, but it's business, your honor, I think is Mr. Cundy has laid out in the affidavit, which is, which is to my knowledge. Correct. The business that they undertake is specific to a very small area where they operate in London. And so it's really, it is a, I think it is a convenience for them to come here when, you know, to see customers and perhaps discuss their fittings with them. As opposed to, you know, standing pat in London when the, when the customer may not be able to make it over as, as for purposes of the fittings or, or see. Well, they presumably do it because they find it profitable, right? They, I believe they do it as a, as a convenience to the client. There is. Well, but I mean, I find that to be so incredible. People, you know, pool is out to make a profit, just like every other tailor. Right. So they're accessing the U.S. markets and other markets so that they can generate profit. I mean, do you disagree with that? No, I don't disagree that the motive is, is, is for profit. It, it, it's a, it's a going concern. That's fundamentally. It's, it's what it's about. Okay, but again. You know, my pillow lays out what is required. It is knowledge of something ignoring a warning sign and then not doing anything. So I submit that the standard that Mr. Burns is, is articulating. Which is simply what he has done, what they did in national business furniture. It's what they didn't relax the back. And it's again, what they're attempting to do do here, which is to water down a fraud statute. Which is beneficial to the business model that Mr. Diamond and his associates run. And that is in our opinion to ensnare the unwary and to extort settlements from them. There's a long history of this. So, essentially, we argue and we believe what they are articulating is, hey, we know what you've said in these cases that it's knowledge of information and then putting your head in the sand. But, hey, really, shouldn't, shouldn't it just be that they didn't do an investigation. That's negligence. That's the classic language of negligence. They have admitted they have absolutely no evidence. Their entire argument is premised on the notion that Poole should have known. Should have done something. That is negligence. That is not gross negligence plus, which is the standard for reckless disregard. So, we would argue that the standard that has been articulated is completely improper and incorrectly stated under this court specifically. Well, Mr. Sharkey, they may be arguing just a little bit more than that, because first of all, let's just start with their argument is that the trial court got it right the 1st time. They believe that there is a genuine issue of material fact as to whether or not who had the requisite knowledge. And they're further arguing that the reason why they're stumped is that this is a 2-6-15. They've had no opportunity to conduct any discovery. And if they were able to conduct some discovery, they'd be able to show that Poole had knowledge. Respond, please. That's their argument, not ours. Your Honor, I would respond to that by saying that Judge Kovacic decided this as a matter of summary judgment. It was not a 2-6-15 dismissal. And given the concerns that the court raised, the court limited discovery to the issue of scienter, which is what the parties did. They wanted they also wanted discovery on Nexus, which Poole refused. And the trial court didn't force Poole to allow didn't allow that discovery. Well, I wouldn't say they didn't allow, I would say that the relator took no action in response to the discovery order that was issued. There was no motion for reconsideration. There was nothing. And that was clear because Judge Kovacic was very careful to say, look, if the case is going to go forward and this is your theory, you need to prove scienter. So let's deal with that. And what they produced was nothing new or should have should have known. And I think that's in response to the interrogatories that we ask that are part of the record, where on three occasions. There are answers to interrogatories three, four and five, and that's a C-490, 491 of the record. They have no evidence of knowledge. They simply articulate that Poole should have known. That is not reckless disregard. It's not gross negligence plus. We can continue. Unless the panel has any further questions, we rest on the briefs. Mr. Sharkey, I would like you to address the second issue. I don't think you've really gotten into that, which is the reverse false claim. And my question to Mr. Burns is, is there something affirmative that is required to establish liability under the reverse false claims theory? And his response was no, that you could simply do nothing and be subject to liability. For example, if you don't pay your state income tax, you're subject to false claims act liability. If I don't pay my vehicle sticker renewal to the state of Illinois every year, I'm subject to liability. So I'd like to hear your response to that. Well, Justice Taylor, I think we we agree with you. We believe that as a fraud statute, this statute requires some action. The language of the statute requires some action. And improperly avoids or decreases an obligation to pay or transmit money. So it by by the legislature's the language that the legislature use, there is some action there. Tell me you pointed to the knowingly avoids. And I don't have the language in front of me, but. Affirmative. Well, I believe, Your Honor, the words themselves conceals and improperly avoids or or conceals and improperly decreases. An obligation to pay money that those are words of action, you may not be in the in the traditional setting of a false claim. Affirmatively submitting something that's false and to entice the government to pay you or reimburse you. But it still requires a submission of something that might not be correct. In other words, a a statement of revenues that are less than what you know, you have ignored the receipts in the drawer, for example. You've thrown them under the under the mat and put your head in the sand and filed something that that materially limits or reduces what your obligation would be. So we think that the legislature was clear in requiring some kind of action there. So I think what you're telling me is because Mr. Burns equates the word avoid to the word fail. So in other words, you when you avoid something, you fail to do something. And if I understand you correctly, you're telling me that avoid is more than a simple, simple failure to do something. It's requires something affirmative. That's correct. That's our view of it. And we believe the statutory structure and the way that the code, the false claim statute is written, supports that. Are you aware of any federal, any interpretation of the Federal False Claims Act that aligns with your reading of the statute? We've cited, I believe, cases in the brief that touch on that, but to whether or not there is a case that squarely and dispositively addresses it, we're not aware of it. And then just the last. I'm sorry, Justice Walker. No, you can continue on. Go ahead. I just wanted to touch on the 1 point Justice Walker that you raised, which is the new other very recent Supreme Court decision that came down on June 1st. I would simply point out that that we think the importance of that decision, which this court has recognized repeatedly, that it looks to the federal decisions because they inform and that the Illinois False Claims Act was modeled after the federal statute. And on page 10 of the court's opinion, Justice Thomas says, and he recognizes, and this is the important thing, the part of the opinion we believe is important. He says on their face and at common law, the FCA standards focus primarily on what the respondents thought and believe. So, it is an inherently subjective standard. The question is, what did Poole know? And this record, unrebutted, is that Poole had no knowledge of the Illinois Use Tax Act. Justice Walker, I don't know if that's where you were headed with me, but if not, I'm happy to answer. That's exactly where I was going. That's exactly what I was going to, because I said I was going to ask you the same question. So, and I want Mr. Burns to have an opportunity to respond to that. Anything else, Mr. Sharkey? Unless the court has any other questions, we would submit, we'd rest on the briefs. Sure. Any other questions, Justices? Okay, Mr. Burns, we're back to you. Thank you. Going back to Justice Taylor's question about whether avoid means fail, I would just like to reiterate that this is not my interpretation. This is MyPillow's interpretation of what avoid means, what reckless disregard means. And at paragraph 42 of the MyPillow decision, it says that reckless disregard requires more than innocent mistakes or negligence. Relator doesn't quarrel with that. It then says it refers to the failure to make such inquiry as would be reasonable and prudent to conduct under the circumstances, a limited duty to inquire, as opposed to a burdensome obligation. So this court has answered that question. What does avoid mean? And just like MyPillow did not conduct a reasonable and prudent investigation under the circumstances, Poole did not conduct a reasonable investigation under the circumstances. And Relator believes that that is the statute, excuse me, that is the standard that the trial court applied the first time when it got it correct. And that is the standard it needed to apply on the motion for reconsideration. And that is why this court should reverse. With respect to the super value case, again, I would direct the court to footnote five, which specifically says, quote, in some civil context, a defendant may be called reckless for acting in the face of an unjustifiably high risk of illegality. And then it says, we need not consider whether that objective form of recklessness relates to the FCA today. So in other words, it did not reach the situation that we've been discussing all afternoon, whether or not the failure to investigate can constitute reckless disregard under the False Claims Act. For these reasons, Relator requests that the court reverse the circuit court. Thank you. And Mr. Burns, did you have anything further that you wanted to say regarding the super value case? Other than what I just mentioned, Your Honor, I was quoting from footnote five of the super value case. That's all you have? Yes, Your Honor. Okay, that's fine. Okay. All right. Well, thank you both. I assume, Justice, do you have any other questions for either of the lawyers? All right. Thank you both. Excellent job. You both provided us with excellent briefing and an excellent argument. And we appreciate your excellence. So thank you both. Have a good day.